UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

S & S PACKING INC.,

        Plaintiff/Appellant,

-vs-                                  Case No. 5:13-cv-386-Oc-10PRK

SPRING LAKE RATITE RANCH, INC.,
d/b/a BLUEBERRY FARM,

        Defendant/Appellee.

_____/

## OPINION AND ORDER

The Perishable Agriculture Commodities Act, 7 U.S.C. § 499a, *et seq.,* ("PACA"), "regulates the sale of perishable agricultural commodities to protect produce sellers from unscrupulous or insolvent dealers, brokers, and commission merchants." Country Best v. Christopher Ranch, LLC, 361 F.3d 629, 631 (11th Cir. 2004). See also In re Lombardo Fruit & Produce Co., 12 F. 3d 806, 808 (8th Cir. 1993) ("PACA was designed to protect small farmers and growers from the sharp practices of financially irresponsible and unscrupulous brokers in perishable commodities.") (quotation and citations omitted); Harry Klein Produce Corp. v. U.S. Department of Agric., 831 F. 2d 403, 405 (2d Cir. 1987) ("The PACA is a remedial statute designed to ensure that commerce in agricultural commodities is conducted in an atmosphere of financial responsibility.").

The Act specifically covers sellers, dealers, brokers, and commission merchants who are licensed under the statute, or operating subject to PACA licensing, and who engage in transactions involving interstate or foreign commerce. See 7 U.S.C. §§ 499a, 499c.  Among other things, section 499b of PACA deems it to be unlawful for any commission merchant, dealer or broker

> to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had; or to fail, without reasonable cause, to perform any specification or duty, express or implied, arising out of any undertaking in connection with any such transaction. . . .

7 U.S.C. § 499b(4).  A violation of any portion of § 499b renders the commission merchant, dealer, or broker liable to the person or persons injured "for the full amount of damages . . . sustained in consequence of such violation."  7 U.S.C. § 499e(a).

In the present case, a grower, Spring Lake Ratite Ranch, Inc., ("Spring Lake") filed a claim with the United States Department of Agriculture ("USDA") under PACA, claiming that S & S Packing, Inc., ("S & S Packing") a growers agent, mishandled Spring Lake's 2010 blueberry crop, and overcharged Spring Lake for various expenses and commissions.  On November 27, 2012, a Judicial Officer with the USDA issued a reparation award in favor of Spring Lake and against S & S Packing in the amount of $109,295.65 plus interest and costs.  The case is now before this Court on an appeal from that reparations award.

Under section 499g(c) of PACA, this appeal is tried *de novo* in this Court, "and shall proceed in all other respects like other civil suits for damages, except that the findings of fact and order or orders of the Secretary shall be prima facie evidence of

the facts stated therein."  The parties engaged in discovery, and the appeal was tried before the Court without a jury on December 8, 2014.  The parties have since submitted their proposed findings and conclusions (Docs. 45-46), and the case is ready for decision without the need for further hearings or oral argument.

For the reasons discussed below, the Court finds that the November 17, 2012 Decision and Order of the Secretary of Agriculture is due to be affirmed.

## Factual Background

### I.    The Parties

Spring Lake is a corporation in the business of growing blueberries, and is located at 25688 Powell Road, Brooksville, Florida 34602.  The company is owned by Ruth and Larry Davis.  Mrs. Davis helped in the field and handled the bookkeeping and payroll; Mr. Davis was in charge of growing the blueberries.  Spring Lake originally operated as an ostrich and emu farm, but started growing blueberries in 1999.  Most years, Spring Lake would harvest about 100,000 pounds of blueberries.  In 2010, Spring Lake's farm consisted of 20 acres, and produced approximately 90,000 pounds of fruit.

S & S Packing was incorporated in 2009 and is a licensed "grower's agent" under PACA, see 7 U.S.C. § 499c.[1]  A "grower's agent" is defined as "any person operating at shipping point who sells or distributes produce in commerce for or on behalf of growers or others and whose operations may include the planting,

---

[1]At the time of the transactions at issue in this case, S & S Packing was not licensed under PACA.  S & S Packing's license was processed and issued on January 13, 2011, retroactive to April 2010.

harvesting, grading, packing, and furnishing containers, supplies, or other services."
7 C.F.R. § 46.2(q).  S & S Packing is owned and operated by Sam Mills.

Mr. Mills also owns a separate nursery, Foliage Farms, Inc., which originally operated as an orchid grower, but eventually transitioned into a blueberry grower in 2000 or 2001.  Foliage Farms' blueberry business started out quite small, but by the 2009 harvest year, the company had two separate blueberry farms, and a sufficiently large crop to sell on the open market.  In February 2009, Foliage Farms entered into a written contract with an entity known as SunBelle (a marketer and grower), through which SunBelle would market and sell all of Foliage Farms' blueberry crops.

At trial, Mr. Mills testified that S & S Packing was formed for the purpose of packing Foliage Farms' blueberries and, ultimately, "to create a business where we could pack other people's fruit."  (Doc. 43, p. 22).  By 2010, S & S Packing had contracts with 14 other growers, including Foliage Farms and Spring Lake.  SunBelle and S & S Packing did not have any written agreement between them, and S & S Packing did not have any partnership or equity interest in SunBelle.  The only relevant contract that existed involving SunBelle was between Foliage Farm and SunBelle.

## II.    The Contract

In 2009, S & S Packing, through its owner Sam Mills, reached out to Spring Lake, and offered to pack, market, and sell their blueberries at a better price than

Spring Lake's current grower's agent had obtained.  S & S Packing also offered to help with Spring Lake's harvest, and to better deal with the farm's "red berries."[2]

On November 19, 2009, Spring Lake and S & S Packing entered into a written contract whereby S & S Packing would act as a grower's agent, to market, distribute, and sell Spring Lake's 2010 blueberry crop.  The contract provides, in relevant part:

## AGREEMENT

This describes an agreement between S & S Packing, Inc. ("S&S") and Spring Lake Blueberry Farm ("Grower") on the following terms:

The purpose of this agreement is to enable Grower to grow, harvest and deliver high quality fresh blueberries to S&& for the purpose of packing, handling, shipping and selling under any brand S&S deems appropriate to obtain the best return for both S&S and Grower.

1.      PRODUCT: Beginning with the 2010 season, S&S will pack and ship the entire US Grade # 1 blueberry production grown by Grower. Grower is responsible for all aspects of growing, harvesting and pre-cooling product resulting in delivery to S&S facilities in a manner consistent with recognized industry standards as to condition and temperature.  The attached Exhibit A contains further information on acceptable conditions and methods of delivery, and is a part of this Agreement.  S&S will be available at all reasonable times to consult with Grower on any method, process, or procedure necessary for the growing, harvesting and handling of the product.

Grower agrees to be inspected and provide information to any third party S&S selects to facilitate the sale of the product.  Grower agrees to grow, harvest and handle all product in accordance with all applicable Governmental Agencies and Regulations.  All parties will work together to ensure all product meets any identification requirements of Government or parties marketing the product.

---

[2]"Red berries" are fruit that has not yet ripened.  Some grower's agents simply dispose of red berries or return them to the grower.  S & S Packing offered to retain the berries for a few days until they ripened, and then pack, market, and sell them.

2.    SALES:  S&S shall with the help of its marketing partners determine the price at which product is sold and to whom it is sold.  S&S shall invoice, collect and mediate any necessary matters concerning said sales.

3.    COMMISSIONS:  The product net sales price received by S&S, less eight percent (8%) sales commission, shall be paid by S&S to Grower on all Grower's fruit sold and delivered by S&S.  The sales price shall be determined by an average of ALL fruit sold in the week delivered.  This shall be known as the POOL PERIOD and the starting and ending of each POOL PERIOD shall be determined by S&S before the 2010 harvest begins.  GROWER WILL BE PAID IN 30 DAYS OF DELIVERY OF FRUIT TO S&S.[3]

4.    PACKING:  S&S will pack, label and arrange for shipping all fruit deemed Grade #1 delivered to its facility.  Grower will have the right to inspect all processing and handling of its product in any part of the packing chain contained in the S&S facility.  S&S will charge a fee of One Dollar ($1.00) per pound for finished product.  This will include ALL PACKING MATERIALS needed to pack, handle and distribute product. S&S will NOT charge a handling fee but will accept and inspect fruit and test for temperature and fitness of product at its own expense.  S&S WILL FURNISH A REFRIGERATED TRAILER AT NO CHARGE.

5.    CULLS:  Grower will own the fruit deemed cull and shall NOT be charged a fee for removing promptly the culls from the S&S packing facility.  At Grower's request S&S will attempt to sell culls.

* * * * * * * * * *

8.    ENTIRE UNDERSTANDING:  This agreement contains the entire agreement between the parties.  No oral understandings or statements contrary to or modifying the terms of this agreement exist now or shall have any effect in the future unless reduced to writing and signed by both parties.

(Pltf. Ex. 1-A, 1-B).

---

[3]A "pool period" is a period of time, usually 7 days, during which fruit received from participating growers is intermingled by the packer and prepared for marketing. S & S Packing's "pool period" typically ran from Thursday to the following Wednesday. It normally takes S & S Packing 48 hours after receipt of fruit to process, cool, and pack it for shipment.

The Parties operated under the contract for the 2010 growing season.   The blueberry season in 2010 ran from approximately April 14th through May 25th.  Spring Lake delivered blueberries to S & S Packing over a five week period (documented as "Week 15 - Week 19" in S & S Packing's paperwork).  Sam Mills was "pleased" with his arrangement between Foliage Farms and SunBelle, so he decided, in his role as owner and officer of S & S Packing, to simply deliver all of its 14 growers' berries for the 2010 season, including Spring Lake's berries, to SunBelle for marketing and sale. (Doc. 43, p. 28).  S & S Packing did not negotiate any prices with SunBelle, or make any inquiries with other marketers or sellers to ascertain whether the prices SunBelle obtained for the berries were higher or lower than the rest of the market.

SunBelle charged S & S Packing an 8% commission plus costs and fees for selling and marketing the berries.  S & S Packing passed all of these charges and commissions onto its growers, including Foliage Farms and Spring Lake.  Pursuant to the contract with Spring Lake, S & S Packing also charged Spring Lake an additional 8% commission for S & S Packing's own services, as well as a packing fee of $1.00 per pound of fruit.

S & S Packing used three pack sizes for blueberries - a 4.4 ounce "clamshell," a 6 ounce "clamshell," and a dry pint.  These packages were then placed into units or flats.  USDA regulations provide that the flats which contain 4.4 ounce clamshells should weigh in total between 3.4-3.8 pounds; the flats containing 6 ounce clamshells should weigh between 4.8-5 pounds, and the flats containing dry pints should weigh 9 pounds.  Growers had no control over the size of the units in which their fruit was

packed day to day – it depended on the orders S & S Packing received from SunBelle.

When fruit was sold, S & S Packing paid all of its growers (including Foliage Farms and Spring Lake) using a pro rata basis known as "pools." At the end of a pool week, growers were credited with proceeds on a pro rata basis based upon the number of units (aka flats) packed by S & S Packing in that pool week. In a given pool week, the total proceeds received for all fruit sold in the pool period was divided by the total number of units (regardless of size) shipped during that week. The net proceeds, divided by the total number of units shipped, equaled the average price per unit. Each grower was then compensated for the number of units it packed based upon the average price per unit in the pool period. Growers were not paid by the pound.

Under this pooling method, a flat containing 4.4 ounce clamshells and weighing only 3.4-3.6 pounds, would therefore receive the same price as a flat containing dry pints and weighing 9 pounds. As a result, it was possible that a grower using the larger packing containers (dry pints) would receive a lower amount of sales revenue for the same pounds of fruit sold as a grower using smaller packing containers (who accordingly filled up more flats).

Spring Lake delivered 80,520.10 pounds of blueberries to S & S Packing (additional berries weighing approximately 10,000 pounds were sold through a different grower's agent). S & S Packing paid to Spring Lake a total of $212,268.72 for the 2010 growing season.

### III.    S & S Packing's Records

S & S Packing's records, at least for the 2010 season, were rather informal and confusing.  When a grower delivered fruit to S & S Packing, the company recorded the number of containers (called "lugs"), and the pounds of fruit received, on handwritten documents (Plaintiff's Exhs. 2A-2AB).  The same document would also note the temperature of the fruit and the number of finished boxes.  However, these records were incomplete, as some of them did not include any weights at all.  See Plaintiff's Exhs. 2C-2D.

When S & S Packing shipped the packaged fruit to SunBelle, S & S Packing used another handwritten document, entitled "Load and Shipping Ticket."  See Plaintiff's Exhs. 3A, 3C, 4A, 4C, 4E, 4G, 5A, 5C, 5E, 5G, 5I, 5L, 5N, 5P, 5R, 6A, 6C, 6E, 6G, 6I, 6L, 6N, 6P, 6R, 6T, 6V, 6X, 6Z, 6AA, 6AB, 6AC, 6AE, 7A, 7C, 7E, 7G, 7I, 7K-7M, 7O, 7Q, 7S, 7U-7X, 7Z, 7AB, 7AD, 7AF, 7AH, 8A, 8C, 8F, 8H, 8J.  These documents list the load date, the pick up and shipping address, the size of the packing containers (4.4 ounce, 6 ounce, or pints), the number of cases, and the carrier information (including temperature of the refrigerated trucks).   These documents do not list any sales price (either per pound or per unit), do not list commissions or other expenses, and do not identify the grower of the blueberries being shipped.

In contrast, SunBelle prepared more detailed records that it submitted to S & S Packing after the fruit was sold.  These documents identify the number of cases received, any cases lost (due to spoilage), cases sold, the average price per case, the

total sales, the 8% marketing fee charged by SunBelle, net sales, freight and handling costs, and the total revenues returned to S & S Packing.  See Plaintiff's Exhs. 3B, 3D, 4B, 4D, 4F, 4H, 5B, 5D, 5F, 5H, 5J, 5M, 5O, 5Q, 5S, 6B, 6D, 6F, 6H, 6J, 6M, 6O, 6Q, 6S, 6U, 6W, 6Y, 6AD, 6AF, 7B, 7D, 7F, 7H, 7J, 7N, 7P, 7R, 7T, 7Y, 7AA, 7AC, 7AE, 7AG, 7AI, 8B, 8D, 8G, 8I, 8K.  However, these documents again did not identify the fruit by grower, and there is no evidence that any records exist that identify the blueberries by grower that were sold in the 2010 season.

It appears that the only records that S & S Packing ever submitted to Spring Lake are entitled "S & S Packing Settlement."  Those records list, for each week that Spring Lake delivered blueberries to S & S Packing, the total number of units, the average price for each unit, the packing and other fees charged (including the SunBelle commission), the 8% commission also charged by S & S Packing, and the "total settlement" paid to Spring Lake.  See Plaintiff's Exhs. 9A-9G.  These documents were prepared well after the blueberries were sold and S & S Packing received its documentation from SunBelle.

For  Week 15, S & S Packing paid to Spring Lake $11,300.91; for Week 16, Spring Lake was paid $14,845.54; for Week 17, $87,136.66; for Week 18, $43,914.16, and for Week 19, $15,250.18. (Plaintiff's Exhs. 9A-9E).[4]  S & S Packing later issued corrected settlement sheets for Week 16 stating that Spring Lake was owed an additional $10,361.75 (Plaintiff's Exhs. 9F-9G; see also Plaintiff's Exh. 12).

---

[4]S & S Packing also gave Spring Lake a $50,000 advance at the beginning of the growing season to assist with harvesting costs.

The settlement sheets state that a check in this amount was issued, and S & S Packing has submitted a copy of the check (Plaintiff's Exh. 24), but there is no evidence that Spring Lake ever received or cashed the check.  In addition, while S & S Packing conceded that this amount was due and owing to Spring Lake due to calculation errors, (see Joint Pretrial Statement, Doc. 31, pp. 5-6), at trial, S & S Packing stated that the actual amount due and owing to Spring Lake for these miscalculations is now only $3,942.54 (which S & S Packing has not yet paid to Spring Lake) (Doc. 43, pp. 93-95).

## IV.    The Dispute Before the USDA

Spring Lake was not happy with the amount of revenue it received from S & S Packing, and on July 21, 2010, it filed an informal complaint for reparation under PACA with the USDA.  See 7 U.S.C. § 499f(a)(1), (2); 7 C.F.R. § 47.39(a)(2).  The informal complaint alleged that S & S Packing was not properly licensed under PACA; charged double commissions; charged Spring Lake for "pooled losses;" paid different growers at different prices; refused to help Spring Lake hire manpower to harvest the fruit; did not send reports to Spring Lake in a timely fashion, if at all; and miscounted pallets of blueberries.

PACA investigated Spring Lake's complaints, and conducted an audit.  On June 9, 2011, PACA issued its findings, which stated that: (1) the written contract between S & S Packing and Spring Lake authorized S & S Packing to charge a packing fee of $1.00 per pound, not $1.00 per flat; (2) the fees charged by S & S Packing for the US Highbush Blueberry Council (USHBC) are required to be paid and therefore were not

inappropriate or illegal; (3) Spring Lake was paid the same price per pound before expenses as at least one other grower; (4) S & S Packing failed to invoice Spring Lake's fruit, and failed to disclose the additional 8% commission charged by SunBelle; (5) S & S Packing was not responsible for providing Spring Lake with manpower to harvest fruit; (6) S & S Packing's deduction of $2,889.36 for pooled losses in Weeks 17-19 was not mentioned in the contract between S & S Packing and Spring Lake, and therefore was not a proper expense; and (7) Spring Lake had not yet provided evidence that S & S Packing miscounted the number of pallets on the loading tickets. The bottom line results of the audit was a finding that S & S Packing owed Spring Lake $31,929.16.

PACA recommended that Spring Lake attempt to mediate or settle the dispute. Any such attempts were unsuccessful, and on September 13, 2011, Spring Lake filed a formal complaint with the USDA,  which laid out in more detail the claims asserted in the informal complaint.  See 7 C.F.R. § 47.6(a)(1).  The formal complaint also alleged that S & S Packing charged a packing fee of $1.00 per pound (as stated in the contract), when it orally agreed to charge only $1.00 per flat; that S & S Packing was not properly certified under GLOBAL GAP; and that S & S Packing miscalculated Spring Lake's revenues for Weeks 18, 19, and 20.  Spring Lake sought recovery of $109,295.65.

S & S Packing filed an answer to the formal complaint, and both parties submitted the dispute to the USDA pursuant to the documentary procedures set forth

in 7 C.F.R. § 47.20.  The parties were given the opportunity to submit evidence and to file briefs.  They waived oral argument or a hearing.

On November 17, 2012, the USDA Judicial Officer issued a Decision and Order (Doc. 12-1).  The Judicial Officer relied on the parties' pleadings, the PACA audit, the contract between Spring Lake and S & S Packing, and evidence submitted by both parties, including Load and Shipping Tickets, settlement sheets, canceled checks, the handwritten documents listing the weight of the fruit delivered from Spring Lake to S & S Packing, and several spreadsheets S & S Packing prepared for the USDA.  The Judicial Officer also relied on S & S Packing's attorney's response to the PACA audit, in which the attorney stated, in part:

> While S&S does not submit to Sunbelle a document labeled "invoice," S&S uses a "purchase order" and a "load and shipping ticket" which serves as an invoice . . . .  The commission S&S pays to its customer Sunbelle is for a separate service governed by a separate contract, and is thus not germane to the contract relationship between S&S [Respondent] and Spring Lake Blueberry [Complainant]. . . .

(Doc. 12-1, p. 7).  The attorney also agreed not to challenge the $2,889.36 charged for pooled losses, and stated that S & S Packing would reimburse Spring Lake for this amount.

The Judicial Officer determined that S & S Packing admitted "to breaching its contract with Complainant by failing to invoice or obtain invoices from its customer or agent, Sunbelle, Miami, Florida, as required by paragraph 2 of the contract."  (Doc. 12-1, p. 7).  The Judicial Officer cited to 7 C.F.R. § 46.14, which requires that records be kept "in sufficient detail as to be readily understood and audited" and to 7 C.F.R. § 46.19, which requires that sales tickets "shall bear printed serial numbers running

13

consecutively and shall be used in numerical order so far as practicable. . . .   The sales tickets shall be prepared and all details of the sale shall be entered on the tickets in a legible manner in order that an audit can be readily made."  The Judicial Officer then stated that "[t]he fact that Respondent did not produce numbered invoices to Sunbelle or obtain numbered invoices from Sunbelle would be reason enough to shed serious doubt upon the accuracy of Respondent's reported sales, making an accurate audit impossible."  (Id., pp. 7-8).

The Judicial Officer also noted that S & S Packing had an undisclosed side contract with Sunbelle, and that S & S Packing failed to account truly and correctly for pooled blueberry losses in Weeks 17-19, in violation of 7 C.F.R. § 46.32(b).  Based on the failure to produce invoices as required by PACA and the contract between Spring Lake and S & S Packing, the failure to account for pooled losses, and the undisclosed side contract, the Judicial Officer concluded that he was "unable to rely on any of Respondent's sales figures."  (Id., p. 8).

Thus, the Judicial Officer relied instead on USDA Market News Reports – in particular the average terminal market prices reported by USDA Market News Service in Miami, Florida.  (Doc. 12-1, pp. 8-9).  Using the total USDA Market News price, less S & S Packing's documented and allowed expenses (no pooled losses and no commissions charged by SunBelle), the Judicial Officer determined that the Gross Sales for Spring Lake's blueberries was $524,854.05, Total Allowable Expenses were $122,992.54, and S & S Packing's Net Sales were $401,861.51.  S & S Packing paid to Spring Lake $212,268.72.  Therefore, S & S Packing still owed to Spring Lake

$189,592.79.  (Id., p. 9).  However, because Spring Lake only demanded $109,295.65 in its formal complaint, the Judicial Officer limited his award to Spring Lake to that lower amount, plus interest at a rate of .17% per annum, and $500 in costs.  (Doc. 12-1, pp. 9-10, 12).   The Judicial Officer did not consider or rule on any of the other claims asserted by Spring Lake in its formal complaint.

S & S Packing filed a petition for reconsideration, and on July 17, 2013, the USDA issued its order granting the petition in part and denying it in part.  The USDA rejected all of S & S Packing's arguments save one, that $6,047.04 for freight charges should have been allowable expenses charged to Spring Lake.  This lowered the amount the USDA found S & S Packing to have underpaid Spring Lake to $183,545.75.  However, since Spring Lake only sought to recover $109,295.65, the reconsideration order again limited the award to that amount, plus interest and costs.  In particular, the reconsideration order again recognized that S & S Packing failed to properly invoice, failed to keep appropriate records, and improperly charged SunBelle's commission to Spring Lake.  The reparation award was affirmed.

S & S Packing then filed its appeal and request for a trial *de novo* in this Court, pursuant to 7 U.S.C. § 499g(c).[5]

### Standard of Review

The standard of review before this Court is stated in 7 U.S.C. § 499g(c):

---

[5]On September 12, 2013, Spring Lake filed a counterclaim in this Court, for the first time arguing that it should be awarded the full amount of damages stated by the Judicial Officer, $189,592.79 (Doc. 12).   S & S Packing moved to dismiss the counterclaim (Doc. 14), which the Court granted on September 11, 2014 (Doc. 29).

Such suit in the district court shall be a trial de novo and shall proceed in all respects like other civil suits for damages, except that the findings of fact and order or orders of the Secretary shall be prima-facie evidence of the facts therein stated. Appellee shall not be liable for costs in said court and if appellee prevails he shall be allowed a reasonable attorney's fee to be taxed and collected as a part of his costs. Such petition and pleadings certified by the Secretary upon which decision was made by him shall upon filing in the district court constitute the pleadings upon which said trial de novo shall proceed subject to any amendment allowed in that court.

The Eleventh Circuit has previously determined in a *de novo* appeal of a PACA decision, where the decision and order cites explicit grounds for its determination of a reparations award, it is only those grounds that may be considered on appeal. Georgia Vegetable Co., Inc. v. Relan, 731 F.2d 798, 801 (11th Cir. 1984). Thus, the Court will limit its review to the issues resolved by the Judicial Officer: (1) S & S Packing's lack of proper invoicing and the Judicial Officer's reliance upon the USDA Market News Prices; (2) the charging of SunBelle's commissions to Spring Lake; and (3) the charging of pooled losses to Spring Lake.[6]

However, because this is a trial *de novo*, the Court allowed evidence in addition to that introduced before the USDA, in accordance with the applicable Federal Rules

---

[6]The Judicial Officer also determined that S & S Packing was either licensed or subject to license by PACA at the time of the events in question. (Doc. 12-1, p. 5). The Parties do not appear to be challenging this finding and it is undisputed that S & S Packing obtained a PACA license, retroactive to April 2010.

of Civil Procedure, and the rules of this Court.[7]  See Relan, 731 F.2d at 802.  See also

G & T Terminal Packaging Co., Inc. v. Hawman, 122 F.3d 1056 (2d Cir. 1995).

The findings of fact in the USDA's Decision and Order will be considered *prima*

*facie* evidence of the facts stated therein; meaning that "they shall stand as the

established facts until sufficient evidence is produced on the trial to overcome them."

Spano v. Western Fruit Growers, 83 F.2d 150, 152 (10th Cir. 1936).  The statute

creates a rebuttable presumption, with the burden of proof resting on the party who

initiates the appeal (in this case S & S Packing).  Id.  See also Frito-Lay v. Willoughby,

863 F.2d 1029, 1033 (D.C. Cir. 1988) ("The Act merely creates a rebuttable

presumption.  It establishes a rule of evidence and does not prevent any defense.");

Wesco Foods Co. v. De Mase, 194 F. 2d 918, 919 (3rd Cir. 1952) ("Under the act of

Congress, the findings in the hearing before the Department of Agriculture are prima

facie correct."); Barker-Miller Distrib. Co. v. Berman, 8 F. Sup. 60, 62 (W.D.N.Y. 1934)

("The present proceeding is not in the nature of an appeal from or a review of that

determination.  It is a proceeding de novo, but, by virtue of the statute, the prima facie

case made out by the findings and order of the Secretary of Agriculture will prevail

unless overcome by evidence submitted by defendant.").

S & S Packing argues that the Court need not afford any deference or

presumption of correctness to the findings of the USDA's Judicial Officer's findings of

_____

[7]Nearly five months after the close of discovery, S & S Packing moved to amend its
exhibit list to add newly discovered evidence (Doc. 38).  S & S Packing provided no
explanation for the late addition of this evidence; the majority, if not all of the evidence
appears to have been created by S & S Packing and in its possession for several
years; and S & S Packing has not provided any legal basis to support its request.  The
motion will therefore be denied.

fact and Decision and Order. However, there must be some degree of deference afforded to these findings and orders by virtue of the statue itself directing the Court to consider them *prima facie* evidence. Any other interpretation would require the Court to completely ignore the entire administrative process, ignore the statute, and put the burden back on the grower to prove up the very claim that it already presented in the administrative proceedings before the USDA. The Court will thus look to the evidence and arguments presented by S & S Packing in this case, to see if they sufficiently rebut the Decision and Order of the USDA.

## Discussion

## I.    Inadequate Invoicing

S & S Packing first challenges the Judicial Officer's determination that S & S Packing failed to invoice or obtain invoices from SunBelle for Spring Lake's fruit, as required by the contract between S & S Packing and Spring Lake. PACA mandates that a growers agent or broker "truly and correctly account" for all transactions. 7 U.S.C. § 499b(4). The applicable regulations define "truly and correctly account" to mean "rendering a true and correct statement showing the date of receipt and date of final sale, the quantities sold at each price, or other disposition of the produce, and the proper, usual or specifically agreed upon selling charges and expenses properly incurred or agreed to in the handling thereof." 7 C.F.R. § 46.2(y)(1). In addition, "sales tickets" must bear printed serial numbers running consecutively, used in numerical order, and all sales tickets "shall be prepared and all details of the sale shall be entered on the tickets in a legible manner in order that an audit can be readily

made." 7 C.F.R. § 46.19.  Each sales ticket must show "the date of sale, the purchaser's name (so far as practicable), the kind, quantity, unit price, and the total selling price of the produce.  Each sales ticket shall show the lot number of the shipment if the produce is being handled on consignment or on joint account." Id. Moreover, 7 C.F.R. § 46.32(a) mandates that a grower's agent "shall prepare and maintain complete records on all transactions in sufficient detail as to be readily understood and audited." The Judicial Officer found that S & S Packing violated each of these legal requirements.

S & S Packing argues that its Load and Shipping Tickets, coupled with "Purchase Orders" received from SunBelle served as the numbered  invoices to SunBelle and comply with PACA regulations.  There are two fatal problems with S & S Packing's argument.  First, the Load and Shipping Tickets are the same documents S & S Packing provided to the Judicial Officer, and which the Judicial Officer found to be deficient.  To be sure, S & S Packing only provided a sampling of those documents, whereas at trial, S & S Packing provided all of the Load and Shipping Tickets for the entire 2010 growing season.  However, whether S & S Packing submits one or 50 of these documents, it does not change the fact that they are deficient and were found to be so by the Judicial Officer.  They do not list any sales prices, prices per units, and more importantly, do not identify in any way the grower of the berries, or the specific volumes or weights of blueberries shipped to SunBelle for a particular grower.  In other words, these documents cannot act as invoices for Spring Lake's fruit delivered to SunBelle.

Secondly, S & S Packing has not submitted any "Purchase Orders" from SunBelle - either to the Judicial Officer or to this Court.  What S & S Packing has submitted to the Court (which was not before the Judicial Officer) are copies of documents prepared by SunBelle that identify the number of cases received, any cases lost (due to spoilage), cases sold, the average price per case, the total sales, the 8% marketing fee charged by SunBelle to S & S Packing, net sales, freight and handling costs, and the total revenues returned to S & S Packing.  See Plaintiff's Exhs. 3B, 3D, 4B, 4D, 4F, 4H, 5B, 5D, 5F, 5H, 5J, 5M, 5O, 5Q, 5S, 6B, 6D, 6F, 6H, 6J, 6M, 6O, 6Q, 6S, 6U, 6W, 6Y, 6AD, 6AF, 7B, 7D, 7F, 7H, 7J, 7N, 7P, 7R, 7T, 7Y, 7AA, 7AC, 7AE, 7AG, 7AI, 8B, 8D, 8G, 8I, 8K.  However, these documents only show the number of cases of blueberries shipped by S & S Packing in total.  They again do not identify whether (or how much of) the fruit came from Spring Lake or some other grower.  Thus, the Judicial Officer correctly determined that these documents do not constitute invoices for Spring Lake's blueberries, and S & S Packing has failed to present sufficient evidence to rebut the Judicial Officer's findings.[8]

S & S Packing further argues that it was permitted under its contract with Spring Lake to pool Spring Lake's fruit with that of other growers, and therefore was not required to itemize any expenses or sales prices specifically for Spring Lake's crop. See Combined Professional Resources, Inc. v. Limeco, Inc., 801 F. Supp. 664, 673

---

[8]It is not entirely clear, but it appears that S & S Packing is also arguing that the settlement sheets it prepared for Spring Lake also constitute invoices.  These documents (see Plaintiff's Exhs. 9A-9G), which were also before the Judicial Officer, are clearly not invoices and do not comply with the requirements of 7 C.F.R. §§ 46.14 and 46.19.

(S.D. Fla. 1992) ("Because Limeco pools limes, it is not required to itemize actual expenses for the disposition of produce received."). See also 7 C.F.R. § 46.32(b) ("Unless there is a specific agreement with the growers to pool all various growers' produce, the accounting to each of the growers shall itemize the actual expenses incurred . . . and all the details of the disposition of the produce received from each grower. . . ."). While the Court does not disagree with these statements, they do not cure the deficiencies in S & S Packing's invoices. Even without itemizing actual expenses, the plain and simple fact is that the documentation S & S Packing claims are its invoices do not provide the information required by the PACA regulations and by the written contract between S & S Packing and Spring Lake, and the Judicial Officer properly deemed them to be inadequate. Moreover, as Spring Lake points out, the contract between it and S & S Packing permits "pooled pricing" of Spring Lake's berries, but does not mention "pooled weighing" which appears to be S & S Packing's practice (combining all berries into one weight). In other words, the contract permits S & S Packing to determine its sales price by using the average of all fruit sold in the week delivered. (Plaintiff's Exh. 1A). It does not mention anywhere that all of the grower's berries will be combined and packed together before being weighed.

In sum, S & S Packing's rebuttal on this point has focused in large part on materials previously provided to the Judicial Officer, and documentation from SunBelle that does not identify in any way the Spring Lake blueberry crop. These

materials are incomplete, confusing, and are insufficient to rebut the Judicial Officer's findings.[9]

## II.    USDA Market News Prices

S & S Packing next challenges the Judicial Officer's use of the average terminal market prices reported by USDA Market News Service in Miami, Florida, to determine an appropriate price for Spring Lake's berries.  To be sure, the contract between the parties gave S & S Packing the authority "with the help of its marketing partners [to] determine the price at which product is sold" (Plaintiff's Exh. 1A, 1B, ¶ 2), but this provision did not relieve S & S Packing of its duty under the statute and governing regulations to properly identify, and account by invoice for, the correct sales price.  And, having already determined that S & S Packing's records were inadequate, the Judicial Officer was within its authority to rely on such pricing information.  See James Macchiaroli Fruit Co. v. Ben Gatz Co., 38 Agric. Dec. 1477, 1484 (1979) (noting that it is in keeping with USDA practice to turn to the Market News prices "in order to make a reasonable assessment of damages in conformity with the actual contract that existed between the parties.").  See also U.C.C. § 2-723 (providing that pricing can be determined by utilizing reported market pricing data).

S & S Packing has not presented any evidence to rebut the Judicial Officer's findings other than the same documentation it presented before the Judicial Officer

---

[9]The Court is further persuaded by the fact that Mr. Mills himself could not clearly explain these various documents, his testimony was frequently confusing, and he could not properly explain the rationale behind the $10,361.75 vs. $3,942.54 that remains due and owing to Spring Lake.

concerning the prices it received from SunBelle, including checks between SunBelle and S & S Packing and between S & S Packing and Spring Lake.  These documents do not even suggest that the prices calculated by the Judicial Officer were incorrect, and as discussed above, do not establish proper and adequate invoicing.  Moreover, Mr. Mills admitted at trial that he did not make any attempt to ascertain whether the prices he received from SunBelle were lower than the average market price, or comparable to prices received from other buyers, and did not negotiate with SunBelle to determine the prices.  S & S Packing simply accepted whatever SunBelle paid it.  This clearly does not rebut the Judicial Officer's findings, and the use of average terminal market prices will stand.

## III.    The Double Commissions

S & S Packing's third point of contention challenges the Judicial Officer's finding that S & S Packing had an undisclosed "side contract" with SunBelle, and that any fees or commissions charged by SunBelle could not be assessed to Spring Lake.

PACA regulation 7 C.F.R. § 46.32(c) provides that

Unless a growers' agent is specifically authorized in his contract with the growers to use the services of brokers, commission merchants, joint partners, or auctions, he is not entitled to use these methods of marketing the growers' produce. Any expense incurred for such services, without the growers' permission, cannot be charged to the growers.

The contract between S & S Packing and Spring Lake makes mention of S & S Packing's "marketing partners," but it does not mention or authorize the payment of other commissions to be passed on to Spring Lake.  Yet, S & S Packing delivered the entirety of Spring Lake's blueberry crop to SunBelle, who charged an additional

8% commission (Doc. 43, pp. 101, 121, 139). This was not permitted under the regulation without Spring Lake's permissions, and the Judicial Officer accordingly found that the commissions and fees charged by SunBelle that were passed onto Spring Lake were not allowed. It is one thing to use a "marketing partner" to fix the price of a crop of fruit (which is specifically permitted in the contract). It is another matter entirely to agree pay a commission <u>chargeable to the grower</u> - and as 7 C.F.R. § 46.32(c) expressly states, such commissions may not be charged to the grower absent express authorization. There is nothing in the contract that provides such authorization.

S & S Packing has not presented any evidence to rebut the Judicial Officer's findings, other than to point to the contract between itself and Spring Lake. That is insufficient to rebut the Judicial Officer's conclusions.

It is clear that S & S Packing violated 7 C.F.R. § 46.32(c) by failing to obtain specific authorization from Spring Lake to pay an additional commission to SunBelle. The Judicial Officer determined that all expenses and commissions charged by SunBelle could not be passed on to Spring Lake, and S & S Packing has failed to sufficiently rebut this finding.[10]

---

[10]S & S Packing's argument in its post-trial brief that "[W]ithout contracting with third party buyers, S & S Packing *could not fulfill* its contractual duties to Spring Lake to sell its fruit." (Doc. 45, p. 19) (emphasis in original), is disingenuous. Neither the Judicial Officer nor this Court is holding that S & S Packing is prohibited from contracting with third party buyers. What has been held (and which the PACA regulations mandate) is that if any third party services are to be utilized they must be <u>specifically authorized</u> by the grower. Otherwise, any expenses relating to those third party entities may not be passed on to the grower.

**IV.**   **Pooled Losses**

The Judicial Officers' final finding was that S & S Packing improperly charged "pooled losses" to Spring Lake in the amount of $2,889.36.  S & S Packing does not challenge this finding, (Doc. 45, p. 19), and has presented no evidence to rebut it.  It will therefore be affirmed.

**V.**   **Remaining Claims By Spring Lake**

Spring Lake raised several other claims in its formal complaint: (1) that S & S Packing overpacked containers; (2) that S & S Packing assessed packing charges by the pound instead of by the flat; (3) that S & S Packing miscalculated its own commission fees; (4) the lack of Global GAP certification; (5) S & S Packing's failure to provide harvest labor assistance; (5) that S & S Packing delayed issuing its reports to Spring Lake; and (6) that S & S Packing paid different prices per pound to different growers.  These claims were not considered by the Judicial Officer, and therefore will not be considered in this proceeding.  See Relan, 731 F.2d at 801.  Moreover, even if the Court were to consider them they would not change the outcome as the Court has determined that the Judicial Officer's findings shall be affirmed in all respects.

**Conclusion**

Accordingly, upon due consideration and pursuant to 7 U.S.C. § 499g, it is hereby ORDERED that the November 27, 2012 Decision and Order of the USDA Judicial Officer is AFFIRMED in all respects.  The Clerk is directed to enter judgment in favor of Spring Lake Ratite Ranch, Inc., d/b/a Spring Lake Blueberry Farm and

against S & S Packing, Inc., in the amount of $109,295.65, plus interest at the rate of .17% per annum from July 1, 2010 until paid, plus costs in the amount of $500.00

Within 14 days from the date of entry of judgment, and in accordance with 7 U.S.C. § 499g(c), and Fed. R. Civ. P. 54(d), Spring Lake may file a properly supported motion for attorney's fees and costs.

S & S Packing's motion in limine (Doc. 32) and motion to amend to add newly discovered evidence (Doc. 38) are both DENIED.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida, this 31st day of May, 2016.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Mari Jo Taylor